BOX OF BULLION.   See Case No. 17,717.

BOX OF BULLION (WILLIAMS v.).   See Case No. 17,717.

BOX OF DRY GOODS (UNITED STATES v.).   See Case No. 14,419.

## Case No. 1,744.

### BOYCE v. The PATAPSCO.

[N. Y. Daily Times, July 23, 1867.]

District Court, S. D. New York.   July, 1867.[1]

#### Maritime Liens—Supplies.

[A vessel is not chargeable with supplies furnished her in a foreign port, unless they were furnished on her credit, and an apparent necessity existed therefor.]

[See note at end of case.]

[In admiralty. Libel by James Boyce against the steamer Patapsco. Dismissed.]

D. & T. McMahon, for libelant.
A. J. Heath, for claimants.

SHIPMAN, District Judge.   This is a suit in rem to enforce an alleged lien on the steamer Patapsco for coal furnished her in the months of February and March, 1866, by the libelant, at Baltimore. It is insisted that the coal was a part of the necessary supplies of the vessel furnished at that port, and that it was furnished on the credit of the vessel. Of the necessity of the coal there can be no doubt. The question in dispute is whether it was furnished on the credit of the vessel.

The steamer was owned by John R. Bacon at the time the article was furnished, but was running in a line owned by the Commercial Steamboat Company, a corporation chartered by the legislature of Rhode Island. This company had an office in New York, and ran their boats between that city and Baltimore. They had exclusive control of the Patapsco, as well as the other boats of their line, and must be deemed, for the time, owners pro hac vice. This company had an agent in Baltimore, who attended to their business there, including the purchase of the necessary supplies for the steamers which were required at that port. The steamers, several in number, had been running on this line for several months, and the agent had been in the habit of purchasing coal for them of different parties, and among others of this libelant. The amount of coal required for each vessel, from time to time, was ordered by the company's agent in writing, the order in each instance designating to which ship the amount called for was to be delivered. The sales were considered to be for cash, but payment on delivery was waived, and the bills presented monthly to the company's agent. This was done as a matter of convenience, and to avoid the multiplication of bills. Purchases of coal had been made of the libelant from time to time, from December, 1865, down to March 24, 1866, the date of the last charge in the account upon which this suit is brought. They were all paid for by the agent up to Feb. 1. The bills were made out to the Commercial

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Reversed by circuit court (unreported). Decree of circuit court affirmed by supreme court in The Patapsco v. Boyce, 13 Wall. (80 U. S.) 329.]

Steamboat Company, but designating the name of the ship to which each parcel was delivered. That delivered in February and March was not paid for, and the libelant seeks to charge the ship.

Now in order to do this the libelant must prove that this coal was furnished on the credit of the ship, and that there was an apparent necessity for resorting to that credit. I think the proof fails on both these points. The libelant dealt, not with the master of the vessel, but with the accredited agent of the company resident in Baltimore. I think that it is clear that he looked to the company generally, and not to the particular ship, for his pay. Again, there is no satisfactory proof of a necessity apparent at the time for resorting to the credit of the ship. There is proof that the affairs of the company were in fact in a state of embarrassment, and approaching the crisis of insolvency. But the proof fails to show that they had not sufficient credit in Baltimore to obtain supplies required for their ships at that port. The fact must be clearly proved before this court can assume that the credit of each ship was or could be resorted to in order to obtain the supplies furnished to such vessel.

The facts in this case, if not exactly the reverse, fall far short of those in the case of Ross v. The Neversink [Case No. 12,079], where I held the boat liable. As I discussed the general question of law involved, upon principle and authority, in the latter case, I do not feel called upon to repeat or enlarge upon that discussion here. Let an order be entered dismissing the libel with costs.

[NOTE. This decree, dismissing the libel, was reversed by the circuit court (case unreported). In affirming the circuit court decision, the supreme court, per Mr. Justice Davis, stated: "It is undisputed that the Patapsco was in a foreign port, and that the coal was ordered for her, specifically by name, and delivered to the officers in charge of her. It is equally free from dispute that the supply of coal was necessary—indeed, indispensable—to enable her to make her voyage at all. In such a case the inference is that the credit was given to the vessel, unless it can be inferred that the master had funds or the owners had credit, and that the material man knew of this, or knew such facts as should have put him on inquiry. The Lulu, 10 Wall. (77 U. S.) 192. There is no reason to suppose that the master had funds, or the owners of the line credit, or that the libelant was guilty of laches. On the contrary, it is in proof that the company which owned the line of steamships was, at the date of these transactions, hopelessly insolvent, and was borrowing large sums of money on a mortgage of its steamers, away from home, and in the very city where libelant resided. It would be strange if the libelant did not know this condition of things, and, in the absence of proof on the subject, it is a reasonable inference that he did. If he had this knowledge, it would be a violent presumption to suppose that he relied on the credit of the company at all for the supplies which he furnished. The company running the steamers was a distant corporation, of no established name, and without personal liability in case the enterprise recently undertaken should prove a failure; and it is hard

to believe that a large and intelligent coal merchant in Baltimore, in dealing with this corporation, intended to renounce his claim against the steamers in case he was not paid. It is very clear that there was no credit to the company at the time of sale, because the coal was sold for cash at the lowest market price; and when the libelant waived his privilege of cash on delivery, and put the coal on board the steamship, the presumption of law would be that he thereby gave credit to the steamship, and not to the owners thereof, inasmuch as the supplies were furnished in a foreign port." The Patapsco v. Boyce, 13 Wall. (80 U. S.) 329.]